## GODDARD v. GENERAL REDUCTION & CHEMICAL CO. et al.

No. 3482.   (Decided November 22, 1920.   (193 Pac. 1103.)

1. CORPORATIONS—ONLY STOCKHOLDERS OF RECORD CAN EXAMINE BOOKS. Under Comp. Laws 1917, § 876, making the books of a corporation subject to the inspection of any bona fide stockholders of record, when construed with section 878, providing that where the corporation is interested the holder of record as shown by its books is considered the holder in fact and the transferee shall have no right or claim against the corporation until the transfer is made on the books, a transferee of corporate stock is not entitled to mandamus to compel the stockholder to permit an inspection of its books unless he shows that he is a bona fide stockholder of record on the company's books.

2. MANDAMUS—GENERAL DEMURRER CAN REACH FAILURE TO ALLEGE PLAINTIFF WAS STOCKHOLDER OF RECORD. The failure of a complainant for mandamus to allege that petitioner was a bona fide stockholder of record omits a material fact essention to relief, and it is subject to general demurrer.

3. MANDAMUS—ALTERNATIVE WRIT IS NOT PLEADING WHOSE ALLEGATIONS CAN SUPPLY COMPLAINT OMISSIONS. In a proceeding for mandamus, the affidavit of the plaintiff is considered as the complaint, and the alternative writ is merely process to bring defendant into court, unless he abides by its terms, so that the alternative writ cannot cure the omission from the affidavit of an allegation essential to the relief demanded.

4. MANDAMUS—ANSWER THAT PLAINTIFF SOUGHT INSPECTION OF CORPORATE BOOKS TO SECURE STOCKHOLDERS' NAMES INTENDING TO SELL THEM STOCK WITHOUT LICENSE STATED NO DEFENSE. Laws 1919 (Sp. Sess.) c. 17, requiring license for sale of stock

by a company, does not prohibit sale of stock by an unlicensed individual, so that an answer, alleging that plaintiff desired to inspect defendant corporation's books in order to secure a list of its stockholders for the purpose of selling to them stock in a corporation which had no license to sell its stock, states no defense.

5. MANDAMUS—ANSWER ALLEGING STOCKHOLDER, SEEKING INSPECTION OF BOOKS, WAS SENDING MISLEADING ADVERTISEMENTS—HELD INSUFFICIENT. An answer in mandamus proceedings to compel a corporation to permit stockholders to inspect its books, which alleged that plaintiff desired the inspection to make a list of stockholders to whom he could send through the mails misleading and fraudulent advertisements, as he had done to these on a former list, without allegations as to the contents of the advertisements or the facts which made them fraudulent or misleading, is insufficient.

6. MANDAMUS—ANSWER, IN MANDAMUS TO ALLOW STOCKHOLDER TO INSPECT BOOKS, THAT HE INTENDED TO USE INFORMATION UNLAWFULLY, HELD A CONCLUSION AND INSUFFICIENT. In proceedings to compel a corporation to permit a stockholder to inspect its books, an answer that plaintiff was a cut-rate stockbroker, that his purpose in seeking the inspection was to procure a list of defendant's stockholders for threatened blackmailing purposes and for the unlawful sale to the stockholders of stock in another corporation, and to enable him to induce the stockholders to breach their contracts to pay for the stock in defendant's corporation, states no defense, since the acts alleged were not illegal, and the charge that they were unlawful and for blackmailing is merely a conclusion.

7. CORPORATIONS—STOCKHOLDER'S RIGHTS TO EXAMINE BOOKS NOT ABSOLUTE. The right of a stockholder under Comp. Laws 1917, § 876, to inspect the books of a corporation, is not absolute under all circumstances; but there may be conditions under which the corporation can deny such inspection. [1]

Appeal from District Court, Third District, Salt Lake County; *John F. Tobin,* Judge.

---

[1] *Clawson* v. *Clayton,* 33 Utah, 266, 93 Pac. 729; *State ex rel. Brandl* v. *Silver King Consol. Mining Co.,* 37 Utah, 62, 106 Pac. 620; *Kimball* v. *Dern,* 39 Utah, 181, 116 Pac. 28, 35 L. R. A. (N. S.) 134, Ann. Cas. 1913E, 166.

Proceedings for mandamus by C. S. Goddard against the General Reduction & Chemical Company and others. From a judgment granting the relief prayed for, defendants appeal.

REVERSED and REMANDED, with directions.

*Wooley & Fox*, of Salt Lake City, for appellants.

*Wm. McCrea*, of Salt Lake City, for respondent.

THURMAN, J.

Plaintiff, instituted proceedings in the district court of Salt Lake county for a writ of mandate to compel the defendants to permit plaintiff to inspect the books and records of the defendant company, and for other relief. The trial court granted the relief demanded by plaintiff, and defendants appeal.

The complaint, in substance, alleges that defendant company is a corporation having its place of business in Salt Lake City; that said company is required to keep books and "does" keep books showing its original stockholders, their respective interests, the amount paid by them on their shares of stock, and also transfers of stock; that, in addition to said books, said company has minute and record books showing the proceedings of all meetings of the stockholders and directors, and also ledgers, daybooks, and journals, showing the business conducted by the corporation, its assets and liabilities, and the purposes for which the money belonged to the corporation has been disbursed. It is further alleged in the complaint that, by virtue of certain statutes referred to in the complaint, plaintiff as a stockholder has the absolute and unqualified right of access to the books of the corporation at any reasonable hour for the purpose of inspection. The complaint further shows that plaintiff made repeated applications on different occasions and at reasonable hours for permission to inspect the books of said company, and that said permission was refused.

Appeal from Third District

Defendants interposed a general demurrer to the complaint, which was overruled by the court and permission given to answer. The answer was duly filed.

As plaintiff moved· to strike certain paragraphs of the answer, as numbered, which motion was in part granted, we deem it expedient, after stating the admissions and denials in the answer, to set out the affirmative matter in full. Paragraph 1 of the answer admits the corporate capacity of the defendant company. Paragraph 2 denies that plaintiff is a bona fide stockholder of the company. Paragraph 3 admits that the corporation is required to keep books. Paragraph 4 denies that plaintiff is entitled to the absolute and unqualified access to the books and denies that plaintiff has been refused access to the books for the purpose of inspection. Paragraph 5 denies that plaintiff was denied access on the particular day mentioned in the complaint. The remaining paragraphs, as numbered, so far as material here, are as follows:

"(6) Further answering the said complaint, these defendants allege: That the plaintiff, C. S. Goddard, is and has been for a number of years engaged in Salt Lake City, Utah, in the business of operating a cut-rate stock brokerage business, and that the said plaintiff as such cut-rate stock broker obtained possession of a certificate for 2,000 shares or more of defendant corporation, which had been assigned to a certain person unknown to the defendants, and the name of the assignee erased by acid by the plaintiff. The plaintiff presented the stock certificate so mutilated to the defendants for transfer, and the defendants on advice of counsel refused such transfer, and thereupon the said plaintiff, and at various times since, threatened that unless and until the defendant made such transfer that he would blackmail the defendants through the mails and newspapers and force them to make such transfer by such methods. Said plaintiff thereupon demanded to see the books of the corporation and was permitted so to do and proceeded to and made a list of the stockholders.

"(7) The said plaintiff has never requested and has been refused access to the books of the corporation. Plaintiff's sole request is to make a list of the stockholders of the defendant corporation for the purpose of the said blackmail scheme and device, and also for the purpose of using such list as a mailing list and to sell to the said stockholders of the defendant corporation stocks in a certain other company called the Congressional Oil Company.

"(8) *By the laws of Utah, chapter 17 of the Special Session of 1919, no company may sell its stock in the state of Utah, or offer same for sale in the state of Utah, without having complied with the provisions of such law and received a license to offer its stock for sale in the state of Utah.,*

"(9) *The said Congressional Oil Company has not complied with the provisions of such law.*

"(10) *The said plaintiff, in order to evade such law and for the said blackmailing purposes as aforesaid, has already made a partial list of the stockholders of the defendant corporation and is engaged in the business of sending through the mails to the said stockholders literature signed with his name urging the said stockholders to buy the said Congressional Oil stock, and these defendants allege that it is the purpose and intention of the said plaintiff to make a further list of the stockholders of the defendant corporation and to further circularize them and offer them for sale the said stock in the said Congerssional Oil Company and in defiance of the law of the state of Utah as aforesaid.*

"(11) Defendants further allege that the defendants are engaged in the business of equipping and operating their plant for the general chemical reduction of ore at Salt Lake City and the manufacture of paint, and to raise funds for such purpose has sold a large amount of treasury stock of the said corporation on contracts and part payments, and the plaintiff, actuated with malice as aforesaid and for his own benefit, has and is sending through the mails representations to the said stockholders to induce them to breach their contracts with the defendant corporation and to buy such stock from the plaintiff to his gain.

"(12) *That by virtue of the provisions of the statute of the state of Utah made and provided and particularly section 8351 and of 8352 of the Compiled Laws of Utah, 1917, it is unlawful for any person to print or publish misleading or fraudulent advertisements, and defendants allege that the said plaintiff in violation of such law is using the said list of stockholders of the defendant corporation to print and send through the mails to the said stockholders misleading and fraudulent advertisements.*

"(13) Defendants allege that such purposes on the part of the plaintiff are unlawful, and that the sole purposes of the plaintiff in seeking a writ of mandate herein is to enable him to obtain a further list of stockholders of defendant corporation for the three aforesaid purposes, and defendants allege that the plaintiff's purposes are unlawful as aforesaid, and the plaintiff is not entitled to be permitted to make such list of stockholders of the defendant corporation or to have access to the stock ledger of said defendant corporation for such purposes."

Plaintiff moved to strike from the answer all of paragraph

6, all of paragraph 7, beginning with the word "plaintiff's," in line three thereof, and all of the succeeding paragraphs of the answer. The court granted the motion as to paragraphs, 8, 9, 10, and 12, and denied it as to the remainder.

The matter italicized in our statement of the answer indicates the paragraphs stricken by the court. As to the remaining paragraphs the court rendered judgment on the pleadings.

Defendants assign as error the overruling of the demurrer to the complaint, the striking out of portions of the answer, and the entry of judgment on the pleadings.

The defendants demurred to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. The specific ground relied on by defendants in support of its demurrer is that the complaint does not show that plaintiff is a bona fide stockholder of record. Comp. Laws Utah 1917, § 876, referred to by plaintiff in his complaint, reads:

"The books of every corporation organized under the laws of this state must be so kept as to show the original stockholders, their interests, the amount paid on their shares, and all transfers thereof; all books of any corporation shall, at all reasonable hours, be subject to the inspection of any *bona fide stockholder of record.*" (Italics ours.)

It is a matter of common knowledge that in every corporation there may be stockholders not of record as well as stockholders of record. Such persons may be bona fide stockholders and entitled to certain rights as such, but they are not "bona fide stockholders of record." Inasmuch, therefore, as there may be stockholders in a corporation who do not come within the class to whom the absolute right of inspection is given, it cannot be successfully contended in a mandamus proceeding to enforce the right of inspection that the complaint is sufficient where it fails to show that the plaintiff comes within the class to whom the right of inspection is given.

The proviso contained in section 878 of the same statutes throws additional light upon the question presented here. It reads:

"Provided, that for the purpose of voting, and of receiving dividends, and of levying and collecting assessments, and *wherein the corporation is otherwise interested*, the holder of record, as shown by its books, shall be treated and considered as the holder in fact, *and the transferee shall have no rights or claims as against the corporation until transfer thereof be made upon the books of the corporation* or a new certificate be issued to him." (Italics ours.)

By the proviso just quoted certain rights are recognized in stockholders of record not accorded to other holders of stock. Among the rights so accorded is, in our opinion, the very right in question here. It must be assumed that the corporation is interested in the matter of allowing its books and records to be inspected. The absolute right of inspection is therefore limited to those to whom the stock has been transferred on the books of the company.

In 10 Cyc. at page 961, it is said:

"No person can claim the right to inspect the books of the corporation as between himself and the company, that is to say, who is not registered as a shareholder on the company's books."

The note referred to in the text cites *Matter of Reiss*, 30 Misc. Rep. 234, 62 N. Y. Supp. 145, the opinion in which sustains the text.

The same doctrine is announced in 7 R. C. L. at page 325 as follows:

"The holder of shares in a corporation is not entiled to exercise the right to inspect the books of the corporation, given him by statute, until he has had transfer of stock to him entered upon the books of the company."

No authority is cited by respondent contravening the doctrine thus announced and in our opinion, under a statute like ours, none can be found.

It is, however, insisted by counsel for respondent that the question should have been raised by special demurrer directing the attention of the trial court to the precise point relied on. This would be true if the complaint was defective in matter of form instead of matter of substance. A good complaint, as against a general demurrer, is one in which, if all the material facts stated are true, the plaintiff is entitled to

the relief demanded, or other relief within the purview of the complaint.

In the case at bar all the allegations of the complaint may be uncontrovertibly true, and yet plaintiff fails to bring himself within the statute which entitles him to relief.

In support of his complaint, respondent makes the further contention that the alternative writ issued recites the fact that plaintiff is a "bona fide stockholder of record," and that the alternative writ should be treated as a pleading. If so treated, respondent contends, the pleading, as a whole, is sufficient and the demurrer was properly overruled. This contention of respondent, as far as the writer is informed, has never had recognition in this jurisdiction. We are referred to no case so holding. The uniform practice hitherto has been to treat the affidavit of the plaintiff in a case of this kind as in the nature of a complaint and the alternative writ issued thereon merely as process to bring the defendant into court unless he complies with its demands.

We know of no reason in the present case for departing from the usual practice. The demurrer to the complaint should have been sustained.

As the judgment must be reversed and the case remanded for further proceedings, it becomes necessary to dispose of the other matters complained of.

Appellants assign as error the order of the court striking paragraphs 8, 9, 10, and 12 from the answer.

Paragraph 8 refers to the law of 1919 providing that no corporation is permitted to sell, or offer for sale, its stock in the state of Utah without receiving a license or complying with the provisions of the law.

Paragraph 9 alleges that a certain corporation, the Congressional Oil Company, has not complied with the law.

Paragraph 10 alleges that plaintiff in order to evade the law, and for blackmailing purposes, has made a partial list of defendants' stockholders and is engaged in sending through the mails to them literature signed with his name

urging them to buy Congressional Oil stock. It is also alleged that it is the purpose and intention of said plaintiff to make a further list of said stockholders and to further circularize and offer for sale said Congressional Oil stock in defiance of the state law.

It does not appear from the paragraphs mentioned that the Congressional Oil Company has offered its stock for sale, or that it is engaged in the business of selling its stock, or that it intends so to do without complying with the law. No charge is made against the Congressional Oil Company in these respects, and as far as plaintiff is concerned as an individual he is not within the purview of the law. The law prohibits corporations only, and, as before suggested, no charge is made against the corporation.

Paragraph 12 refers to certain sections of the statute making it unlawful for any person to print or publish misleading or fraudulent advertisements. It is then alleged that the plaintiff in violation of such law is using a list of the stockholders of the defendant company to send through the mails to them misleading and fraudulent advertisements. What these advertisements are, and whether or not they are fraudulent and misleading, the court has no means of determining from any specific allegation. Neither does it appear that the allegations in paragraph 12 have any relevancy or materiality whatever as a defense to the action.

The trial court did not err in striking these paragraphs from the answer.

Appellants also assign as error the order of the court rendering judgment on the pleadings. As far as this assignment is concerned, it must be conceded that the court erred in entering judgment on the pleadings for the reason that the complaint, as heretofore determined, does not state sufficient facts. But assuming that the complaint is invulnerable as against the demurrer interposed, the question is: Do the remaining paragraphs of the answer state facts sufficient to constitute a defense? In determining this question the admission and denials in defendants' answer must be considered as well as the matter set up as an affirmative defense.

If the matter contained in the admissions and denials is not materially qualified by the matter affirmatively alleged, we have no difficulty in determining that the answer is sufficient, for it is denied that the plaintiff is a bona fide stockholder and also denied that plaintiff was refused permission to inspect the books. This, if true, constitutes a complete defense. The question is, however: Does the affirmative matter alleged so far qualify the admissions and denials as to render the answer insufficient as a whole? Even in the affirmative matter of the answer, it is alleged that plaintiff was permitted to see the books and that he then proceeded to make a list of the stockholders. It is also affirmatively alleged that plaintiff had never requested and been refused access to the books of the corporation. For these reasons we are of the opinion it was not a case for judgment on the pleadings and that the court erred in rendering such judgment. Having arrived at this conclusion, we are only justified in proceeding further on the ground that as the case will, presumably, be tried again, it is necessary to determine whether certain affirmative matter alleged in the answer constitutes a defense to the action.

The substance of the allegations material to be considered in the remaining paragraphs is as follows: Defendants allege that plaintiff is engaged in a cut-rate brokerage business; that plaintiff obtained a certificate for 2,000 shares of stock of defendants' company which had been assigned to an unknown person, and that plaintiff, by means of acid, had erased the name; that plaintiff had presented the stock so mutilated to the defendants for transfer, which, on advice of counsel, was refused; that since said refusal plaintiff at various times has threatened to blackmail defendants through the mail and newspapers and by such means force a transfer of the stock; that plaintiff was permitted to see the books and proceeded to make a list of the stockholders; that plaintiff has never requested and been refused an inspection of the books; that his sole request is to make a list of the stockholders for blackmailing purposes and use such list as a blackmailing list and to sell to the stockholders of the defendants

stock in the Congressional Oil Company; that defendants are engaged in equipping their plant for the general reduction of ore in Salt Lake City and the manufacturing of paint, and to raise funds for such purpose have sold a large amount of treasury stock of said company on contracts and part payments; and that plaintiff, actuated with malice and for his own benefit, has sent through the mails representations to defendants' stockholders to induce them to breach their contracts with the defendants and buy stock from the plaintiff. Finally, defendants allege that such purposes are unlawful and that plaintiff's sole purpose in seeking the writ of mandate is to enable him to obtain a further list of the defendants' stockholders for the aforesaid unlawful purposes.

The foregoing constitutes the propositions material to be considered.

While it is alleged that plaintiff is engaged in a cut-rate stock brockerage business, the materiality of such allegation is not apparent. Neither does it appear that plaintiff's erasure of the name of the unknown assignee from the stock certificate was wrongful, for it may have been done with the knowledge and consent of the assignee. The answer nowhere negatives plaintiff's right to erase the name. Defendants' refusal to make the transfer and plaintiff's threat to blackmail the company become utterly immaterial in view of the allegation that plaintiff was permitted to see the books and that defendants never denied his request to inspect them. The allegation that plaintiff desired the list for blackmailing purposes and has mailed the list to defendants' stockholders to sell them stock in the Congressional Oil Company is not shown to have been improper much less unlawful. It does not even appear that the Congressional Oil Company was a competitor of the defendant company or that the defendants' business would be in the least degree affected by the alleged conduct of the plaintiff. Besides this, we know of no legal reason why a mere stockholder of one company may not induce other stockholders of the same company to purchase stock in another company if he so desires. The fact that the defendants were engaged in selling treasury stock for legit-

imate corporate purposes did not preclude plaintiff's right to induce defendants' stockholders to purchase stock from him, even if it did indirectly affect the defendant company. The plaintiff, at most, was only a stockholder. He was not a director and held no position of trust towards the defendant company or the stockholders thereof.

As we read the paragraphs referred to, there is no act of misconduct properly charged against the plaintiff. It is true that defendants repeatedly allege that certain acts were unlawful, but no specific facts are alleged in support of their conclusion. The same is true as to the term "blackmail" and "blackmailing" appearing promiscuously throughout the pleading. No facts are stated in support of the conclusion.

If the court had stricken all the paragraphs referred to in the motion to strike, except as to the affirmative allegations that defendants permitted plaintiff to see the books and never denied his request to inspect them, we are of the opinion no error would have been committed.

There is no question in this jurisdiction as to the right of a bona fide stockholder of record to inspect the books of the corporation. The right has been upheld in several cases decided by this court. *Clawson* v. *Clayton et al.*, 33 Utah, 266, 93 Pac. 729; *State ex rel. Brandl* v. *Silver King Consol. Mining Co.*, 37 Utah, 62, 106 Pac. 520; *Kimball* v. *Dern*, 39 Utah, 181, 116 Pac. 28, 35 L. R. A. (N. S.) 134, Ann. Cas. 1913E, 166. In the case last cited the court in concluding its opinion said:

"The statute gives the stockholder the absolute and unconditional right to inspect the books of the corporation, and it is the duty of this court to give it such effect."

We are not inclined to give this language further effect than is warranted by the facts in that case. In that case the facts did not justify a denial of the right, and therefore the conclusion reached by the court was correct. But that there may be conditions and circumstances which would justify the corporation in refusing to permit an inspection is clearly recognized in *Clawson* v. *Clayton et al.*

*supra,* and by practically all of the authorities cited by defendants. *Weihenmayer* v. *Bitner,* 88 Md. 325, 42 Atl. 245, 45 L. R. A. 446; *People* v. *Chicago City Ry Co.,* 183 Ill. App. 283; *Knox* v. *Coburn,* 117 Me. 409, 104 Atl. 789; *Withington* v. *Bradley,* 111 Me. 384, 89 Atl. 201; *Stone* v. *Kellogg,* 165 Ill. 192, 46 N. E. 222, 56 Am. St. Rep. 240; *State* v. *Doe Run Lead Co.* (Mo. App.) 178 S. W. 298; *State* v. *German Mutual Life Ins. Co.,* 169 Mo. App. 354, 152 S. W. 618.

A careful consideration of these cases quite clearly indicates the conditions and circumstances under which the right of inspection may be denied. They also conclusively demonstrate that defendants' answer in the case at bar, as far as plaintiff's alleged unlawful conduct is concerned, does not state facts sufficient to constitute a defense to plaintiff's action.

For the reason stated, the judgment is reversed, and the cause remanded to the trial court, with directions to permit the parties to amend their pleadings, if they desire, and take such further steps as may be in accordance with law. Appellants to recover costs.

CORFMAN, C. J., and FRICK, WEBER, and GIDEON, JJ., concur.